UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| KIMBERLY A. DISANTO, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:10 CV 120 |
| | ) | |
| GENOVA PRODUCTS INC., *et al.*, | ) | |
|     Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Kimberly A. DiSanto ("DiSanto") is a commercial truck driver who was making a delivery to the premises of defendant Genova Products Inc. ("Genova"). She slipped and fell in the snowy driveway where she had parked her truck, breaking her ankle. She brought this suit against Genova, alleging that its negligence in designing, constructing and maintaining the driveway caused her injuries. (Complaint, DE # 35 at ¶ 17.) The case is before the court on Genova's motion for summary judgment. (DE #94.) For the reasons set forth below, the motion is to be denied.

*Facts*

For the purposes of resolving Genova's motion, the parties do not dispute the following facts.[1] At about 1:30 p.m. on February 18, 2009, DiSanto and her driving partner, Randall Lehmeier,[2] picked up the load in Minnesota that was to be delivered to

---

[1] As to most of the facts listed, the parties are in actual agreement. To the extent there is any dispute, the court gives the version of the fact most favorable to plaintiff DiSanto.

[2] By way of background, not as a statement of fact, DiSanto and Lehmeier are "long-haul truckers" who drive straight through to destinations, taking turns driving. One sleeps in a sleeper area of the truck's cab while the other drives.

Genova in Fort Wayne, Indiana. (DiSanto dep. at 54;[3] Lehmeier dep. at 39.[4]) The load was a "hot load," trucking jargon which means an on-time delivery is necessary to avoid a stoppage of the recipient's manufacturing operations. (DiSanto dep. at 57; Lehmeier dep. at 39-40.) The load "had to be there for 7:00 a.m." the next morning. (DiSanto dep. at 57.)

DiSanto and Lehmeier drove straight through: the truck "never stopped."[5] (*Id.* at 57-58.) They arrived at Genova at 6:15 a.m. (*Id.* at 58.) DiSanto believed that in the 45 minutes until the appointed delivery time, the truck could be moved to the position where it would be ready to be unloaded at 7:00 a.m. (*Id.* at 58-59.) After pulling into Genova's drive, however, the gate into the premises was closed and the guard shack by the gate was empty. (*Id.* at 59; DE #101-5 at 3.) DiSanto exited the truck and used a keypad box next to the gate to try to contact someone inside to come open it. (DiSanto dep. at 63-64.) After getting no response, she reentered her truck and used her phone to call her listed contact at Genova, and just got an answering machine. (*Id.* at 64-65.) She called a second time, selecting the numerical prompts to reach the shipping and

---

[3] Ex. C (DE # 101-3) attached to DiSanto's response to Genova's motion for summary judgment is represented to be pages from her deposition. It should be noted that the page of that exhibit stamped by the CM/ECF system as page 3, deposition pages 37-40, is actually four pages from Lehmeier's deposition, apparently included by mistake during scanning to create the pdf document. The court is aware of the mistake and has not considered that portion of the exhibit as part of DiSanto's deposition. In addition, the page stamped as CM/ECF 6 is a duplicate of CM/ECF 5.

[4] DE # 101-2.

[5] Obviously this is a figure of speech. The truck had to make brief stops as when, for example, when DiSanto and Lehmeier switched driving duties.

2

receiving department, and then got a recorded message saying that Genova did not open until 8:00 a.m. (this despite it being undisputed that the scheduled delivery time was 7:00 a.m.). (*Id*. at 64-65.) After using a "Qualcomm" communications system in the truck to verify arrival at Genova so that there would be no late charge assessed, DiSanto looked in the side-view mirror on the passenger side of the truck. (*Id*. at 68-69.) She became concerned that the rear of the truck might be sticking out into the roadway and interfering with passing traffic. (*Id*.) She got out of the truck to walk to the rear to see if that was the case, and that is when she slipped and fell on snow-covered ice, causing the alleged injuries at issue in this case. (*Id*. at 69, 75-76.)

*Legal Standard*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir.

2010). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an issue of fact on an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). On the other hand, even when all material facts are undisputed, the moving party must show that the law applied to those facts requires a judgment in his/her favor or the motion will be denied. FED. R. CIV. P. 56(a)("court shall grant summary judgment if the movant shows . . . the movant is entitled to judgment as a matter of law").

*Analysis*

Uncontested allegations in plaintiff's complaint show, and the court finds, that this case is within the court's diversity jurisdiction. The parties do not dispute that the substantive issues are governed by Indiana state law. Under Indiana law, a negligence claim requires proof of three elements: "(1) a duty on the part of defendant in relation to the plaintiff; (2) failure on the part of defendant to conform its conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." *Miller v. Griesel*, 261 Ind. 604 , 611 (1974). Before the case presents a jury question, there are questions of law to be decided by the court, the first being essentially the initial element needed to establish negligence, that is, whether the

defendant owed the plaintiff a duty. (*Id.*) "Whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law exclusively for the court." *Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 517 (Ind. 1994).

The duty a landowner owes to a person upon his/her land has come to be well-defined over the years, and "depends on the person's status as a trespasser, licensee, or invitee." *Kopczynski v. Barger*, 887 N.E.2d 928, 931 (Ind. 2008). An invitee includes a person invited onto premises for a business reason of the landowner, while a licensee is on the land to suit his/her own curiosity or convenience. *Rhoades v. Heritage Investments, LLC*, 839 N.E.2d 788, 791-92 (Ind. App. 2005) ("in the determination of whether an individual is an invitee or a licensee, the distinction between the terms 'invitation' and 'permission' becomes critical."). An invitee is owed a duty of reasonable care, while a landowner owes a licensee only a duty to refrain from inflicting a willful or wanton injury or placing him/her in a position of increased peril. (*Id*. at 791.)

Even though, as already noted, "[a] person's status on the land, along with the duty owed, is a matter left for determination by the trial court, not the jury," (*Id.*), the question can "turn on factual issues that must be resolved by the trier of fact." *Kopczynski*, 887 N.E.2d at 931. "[T]he ultimate existence of a duty [can become] a mixed question of law and fact." *Douglass v. Irvin*, 549 N.E.2d 368, 369 n. 1 (Ind. 1990). This can easily happen in a landowner liability case, because slight changes in facts can cause a person who comes onto the land as an invitee to then lose that status by exceeding the

5

scope of the invitation, for example, by engaging in a different purpose than the one invited for or by entering unauthorized portions of the land. *See Markle v. Hacienda Mexican Restaurant*, 570 N.E.2d 969, 974-75 (Ind. Ct. App. 1991) (question of fact precluding summary judgment as to whether restaurant patron changed from invitee to licensee when moving piece of steel from his car to friend's car in parking lot).

In the present case, Genova bases its motion for summary judgment on the premise that at the time she slipped and fell, DiSanto was nothing more than a licensee, even though she had been invited to the premises by Genova to make a delivery. Genova argues that she was no longer an invitee when she slipped and fell because she exceeded the limits of the scope of her invitation, in two ways. First, she had been asked to make the delivery at 7:00 a.m., but arrived nearly an hour early at a time when Genova could not reasonably have expected her to arrive. Second, because her purpose for being on the premises was only to make a delivery, but that purpose changed to one solely for DiSanto's benefit when she walked to the rear of her truck to check the safety of its parking. (DE #96 at 7.)

Genova argues that the most analogous case under Indiana law is *Gilpin v. Ivy Tech State College*, 864 N.E.2d 399 (Ind. App. 2007). In *Gilpin* the plaintiff drove his son to the Ivy Tech campus and waited in his vehicle while the son registered for classes. (*Id.* at 400.) When the son returned, Gilpin asked him to lead the way to the restroom in the main building. (*Id.*) As they proceeded, Gilpin slipped on loose gravel on the sidewalk

6

and was injured. (*Id*. at 401.) The court concluded that Gilpin was a licensee, not an invitee, because:

> Construing the evidence in the light most favorable to Gilpin, no reasonable person could conclude Ivy Tech extended an invitation to Gilpin to use its public restrooms under these circumstances. There is no evidence Ivy Tech encouraged, desired, induced, or expected Gilpin or other members of the public at large to use its restrooms.

(*Id*. at 402.) Genova argues that, "as analogous to *Gilpin*:"

> Ms. Disanto's presence on Genova's premises was for a single purpose. In *Gilpin*, that purpose was for the plaintiff to drop off and pick up his son from class scheduling. For Ms. Disanto, that purpose was to make a delivery at 7:00 a.m. Second, as analogous to *Gilpin*, Ms. Disanto's presence on Genova's premises at the time of the alleged injury was not for the purpose for which she was intended to be there. In *Gilpin*, the plaintiff's legitimate purpose changed from dropping his son off, to a secondary purpose of using the restroom. In this matter, Ms. Disanto's legitimate purpose for being present, which was to make a delivery at 7:00 a.m., changed to checking the safety of her parking position.

(DE #96 at 6-7) (capitalization of DiSanto as in original). Thus, Genova concludes that DiSanto, like the plaintiff in *Gilpin*, was a licensee and not an invitee. The court is not persuaded by Genova's analogy and finds *Gilpin* to be of little help in deciding the present case.

This is because in *Gilpin* there is simply no discussion whatsoever of Gilpin having a "legitimate purpose of dropping off his son" which changed into a secondary purpose of using the restroom. The point in *Gilpin* is that the plaintiff had no purpose at all for being on Ivy Tech's premises, and was at all times a licensee, not an invitee:

> Gilpin was not planning to pursue his own educational objectives. Gilpin's son Joseph had concluded his business with Ivy Tech for the day.

7

> There is no evidence Gilpin was entering the building to speak with Ivy Tech personnel on his son's behalf or to provide advice to his son regarding his educational opportunities at Ivy Tech.

864 N.E.2d at 402 (footnote omitted).[6] Unlike Gilpin, DiSanto was an invitee, and *Gilpin* has nothing to say about whether arriving 45 minutes early, or checking her truck to see if it was in a safe position, caused her to lose that status.

As to the first issue, DiSanto's early arrival, undoubtedly at some point that could cause an invitee to go beyond the scope of the invitation, as, for example, if DiSanto had arrived 24 hours early. The court does not think arriving 45 minutes early crosses the line and allows a conclusion as a matter of law that DiSanto lost her status as an invitee. *Cf. Wright v. 404 Associates, Inc.*, 2004 WL 1965850 at *2 (Conn. Super. 2004) (applying similar test under Connecticut law, person arriving early to decorate banquet hall for party invitee, not licensee). At the very least, the present case, like *Markle*, presents an issue of fact as to whether DiSanto's early arrival exceeded the scope of her invitation.

Making the point that an issue of fact exists more evident, Genova's receiving manager, Michael Wallace,[7] stated in his deposition that many times prior to the date of the accident at issue here, Genova had trucks arrive to make deliveries before Genova opened for business in the morning. (DE #101-4 at 3.) In addition, DiSanto's expert

---

[6] In the omitted footnote the court stated that it left "for another day the question whether a parent thus assisting a child would be an invitee or a licensee." *Id*. at 402 n.4.

[7] The court sees nothing in the record establishing that Wallace holds that position, but Genova has not objected to that assertion in DiSanto's brief.

8

witness, James A. Acock, opines that because of the need to make on-time deliveries, not lose the assigned time-slot for unloading, and taking into account the vagaries of the time needed for long-distance travel in bad weather, it was appropriate for DiSanto and her driving partner to assume they would be able to access Genova's premises at 6:15 a.m. for a delivery scheduled at 7 a.m. (DE #101-6 at 5.)[8] Thus, Genova's contention that "[t]here is no inference that Genova did or should have expected her to arrive nearly one (1) hour earlier that [sic] agreed to," (DE #96 at 7), is factually disputed, and Genova has not established that, as a matter of law, DiSanto changed from an invitee to a licensee.

As to the second issue, DiSanto checking the rear of her truck, but also relevant to the arrival-time issue, Indiana has defined a business invitee to include "a person who is invited to enter or remain on land for a purpose directly *or indirectly connected* with business dealings with the possessor of the land." *Burrell v. Meads*, 569 N.E.2d 637, 642 (Ind. 1991) (emphasis added.) At the time DiSanto slipped and fell she was trying to obtain access to Genova's premises to make the delivery Genova had requested, and was checking to see if her truck was parked safely. It does not take a crystal ball to see that if the rear of her truck had caused a severe auto accident to occur on the roadway, Genova would have been named as a defendant in a lawsuit with more at stake than the present; in other words, DiSanto's concern regarding how her truck was parked was of

---

[8] Taking Acock's opinion in the light most favorable to DiSanto, there is an implication that Genova, which had a shipping and receiving department, would be aware of early truck arrivals, and such knowledge is consistent with Wallace's deposition testimony.

benefit to Genova. Therefore, the court concludes that at the very least there is an issue of fact whether DiSanto's conduct was indirectly connected to her business dealings with Genova, meaning she would remain an invitee. *Markle*, 570 N.E.2d at 875; *but see Silvestro v. Walz*, 222 Ind. 163 (Ind. 1943) (auto-repair-shop customer looking for restroom fell down stairs; jury determination that he was licensee reversed, holding he remained invitee as a matter of law).

*Conclusion*

For the reasons above, Genova's motion for summary judgment (DE #94) is **DENIED**. The parties' attorneys are directed to confer regarding possible trial dates, then contact the undersigned's courtroom deputy for scheduling.

**SO ORDERED.**

Date: April 7, 2014

    s/ James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT